ZEITINGER et al. v. HARGADINE-McKITTRICK DRY GOODS CO.

(Circuit Court of Appeals, Eighth Circuit. July 21, 1917.)

No. 4900.

BANKRUPTCY ⬫49—CORPORATIONS—INTERVENTION BY STOCKHOLDERS.

A court of bankruptcy cannot be compelled to exercise its jurisdiction in aid of a fraud, and has power to permit the intervention of stockholders to contest a voluntary petition filed on behalf of the corporation by its officers and directors, upon a showing that the object of the proceeding was to avoid the effect of a judgment obtained by stockholders against the corporation and directors for the appointment of a receiver for the corporation, and for an accounting by the directors for fraudulent mismanagement.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

In the matter of the Hargadine-McKittrick Dry Goods Company, voluntary petitioner in bankruptcy. Christian J. Zeitinger and others appeal from an order of adjudication and an order denying their right to intervene. Reversed.

For opinion below, see 239 Fed. 155.

⬫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Randolph Laughlin and Matt G. Reynolds, both of St. Louis, Mo. (Julian Laughlin and Chase Morsey, both of St. Louis, Mo., on the brief), for appellants.

Charles A. Houts, of St. Louis, Mo., for appellee.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. This is an appeal from a decree, entered February 6, 1917, adjudicating appellee a bankrupt on its voluntary petition, and also from an order denying to appellants the right to intervene in said proceeding.

The appellee was first adjudicated a bankrupt on January 6, 1917, on its voluntary petition, and a receiver of its property appointed. Subsequently, on the same day, the order of adjudication and the order appointing a receiver were vacated, and a hearing ordered on the voluntary petition for January 13, 1917. On January 6, 1917, the board of directors of appellee adopted a resolution authorizing and directing the president and secretary of appellee, or either of them, to execute on behalf of the corporation an instrument in writing, admitting the inability of said company to pay its debts and its willingness to be adjudged a bankrupt on that ground, and authorizing the president and secretary, or either of them, to take such immediate steps on behalf of said corporation as would be appropriate to have the same adjudged a bankrupt and a receiver appointed to take charge of its assets. On the same day the voluntary petition in bankruptcy of appellee was prepared, signed, and filed; the same being signed by Martin P. Donahoe, president. Schedule A attached to the petition named the following creditors:

| | |
|---|---:|
| Suit by George H. Allan, of St. Louis, Mo., for shares of profits on the manufacture and sale of bags | $ 30,000.00 |
| Guaranty to Missouri Pacific Railroad Co. on account of its lease on Pontiac Building. Matured claim January 1, 1917 | 118,577.45 |
| Unmatured claim on the same lease | 343,000.00 |
| Salaries due workmen, clerks, or servants for month of January | 820.00 |
| Total | $492,397.45 |

Schedule B showed assets of the value of $300,959.96, one item of which was: Deposits of money in banks and elsewhere, $196,176.73. At the hearing on January 13, 1917, appellants, being stockholders of appellee, presented to the court for filing a petition in intervention, setting forth the petition, findings of fact, conclusions of law, and decree of the circuit court of the city of St. Louis, Mo., in an action commenced in December, 1915, wherein the intervening petitioners were plaintiffs and the appellee and its board of directors were defendants.

It appeared, from the intervening petition and duly certified copies of the record of the suit in the circuit court, that the intervening petitioners, as stockholders of appellee, had commenced an action in said circuit court in December, 1915, against appellee and its board of directors, the general nature and purpose of which was to take from the possession and control of the board of directors all of the assets of appellee of every nature and kind, and to secure an account-

ing against the members of the board of directors for loss, waste, and damage caused by their fraudulent mismanagement of the affairs of the corporation; that appellee was a necessary party to said action in the circuit court, and appeared therein and filed its answer, as also did the board of directors; that upon the assurance by the defendants in the action in the circuit court that the status quo of appellee and its assets would be maintained, and that the same would not be disposed of until the case was finally determined and judgment entered, no temporary injunction was granted or a receiver appointed at the commencement of the action; that the case in the circuit court was finally brought to trial, the trial thereof continuing over a period of four weeks. At the end of the trial the case was taken under advisement, and was held until December 29, 1916, when the court announced its decision to the effect that it would grant an accounting and appoint a receiver, and at the same time fixed the bond of the receiver at $500,000.

Appellee and the board of directors contested the suit in the circuit court at every step. On the day the decision was announced, counsel for the plaintiffs were asked to prepare a decree and submit the same to opposing counsel; the court stating that, if counsel could not agree upon the terms thereof, the court would settle same. On January 5, 1917, the decree was prepared and copies furnished to counsel for the directors and appellee. The circuit court on January 8, 1917, formally entered its judgment and decree, which had been informally announced on December 29, 1916. A receiver was appointed and took possession of all the assets of appellee, in the possession of the board of directors and what is known as the executive committee, and ever since has held the possession of said property subject to the order of the circuit court. It appeared, from the findings of fact, conclusions of law, and decree of the circuit court set forth in the record, that the circuit court adjudged that the board of directors had wasted, misappropriated, and lost the assets of the corporation in many ways, in sums aggregating millions of dollars, for which misappropriation and losses said directors were held accountable and liable, including Martin P. Donahoe, who signed the voluntary petition in bankruptcy as president of appellee; that George H. Allan, who appears in Schedule A as a creditor of appellee, was a defendant in the suit in the circuit court, and was there held accountable in a sum many times in excess of the amount of his claim. It was also adjudicated by the decree of the circuit court that the guaranty of appellee to the Missouri Pacific Company was ultra vires and void, and a fraud upon appellee and its stockholders, and that at the time the petition was filed in that court the directors of appellee had in their possession assets of the actual and potential value of $3,198,-000. The circuit court by its decree referred the matters which required an accounting to a referee for report.

The intervening petitioners claimed that to allow appellee to file a voluntary petition and be adjudicated a bankrupt, in the face of this record, would result in the commission of a fraud upon the petitioners in intervention and plaintiffs in the suit in the circuit court, as well as upon the circuit court and the United States District Court,

in which the voluntary petition in bankruptcy was presented; that it was clearly manifest that the only purpose of filing the voluntary petition was to bring about the appointment of a trustee in bankruptcy, who would necessarily be controlled and appointed by the creditors of appellee, if any, in the interest of the directors and other persons who were held liable in the action in the circuit court, and thereby the whole proceedings and judgment in the circuit court would be paralyzed and rendered abortive. The District Judge, in passing upon the right of the interveners to intervene in the voluntary bankruptcy proceeding, said:

"In view of all the facts brought to its attention, this court cannot regard this case otherwise than as an effort on the part of the officers and directors of the bankrupt company to evade the process of the circuit court of the city of St. Louis, and to escape the performance of its decree. No creditor of the bankrupt company seems to feel any concern about the collection of his debt, and the moving parties in the present bankruptcy proceedings are the officers and directors of the company. These are the same persons who by the judgment of the circuit court of the city of St. Louis have been held liable to the company or its stockholders for a large sum of money."

Notwithstanding these views, the District Court denied the right of the interveners to file their petition in intervention and granted an adjudication on the voluntary petition of appellee. The District Court seemed to be of the opinion that it was helpless to prevent what was apparently a fraud on its own jurisdiction, that of the circuit court, and upon interveners, because it was of the opinion that no defense could be made to the voluntary petition in bankruptcy. But the case made by the intervening petition and the exhibits attached thereto was of a broader signification than a mere litigation of the truth of the allegations in the voluntary petition.

The showing made by the interveners did tend to show that the two main creditors named in the voluntary petition were not creditors at all, so that on the face of the record there were only left in Schedule A the salaries to become due for the month of January, 1917, to the clerks and employés of appellee, amounting in all to $820, and as against this Schedule B showed a cash item of $196,000. These facts, however, were brought forward for the purpose of showing that the whole proceeding was fraudulent. There are expressions in the decisions of the courts to the effect that the allegations of a voluntary petition are not issuable; for instance, in Hanover National Bank v. Moyses, 186 U. S. 181, 22 Sup. Ct. 857, 46 L. Ed. 1113, the contention was made that to allow the filing of a voluntary petition in bankruptcy without giving notice to any creditor rendered the law unconstitutional, in that it deprived creditors of their property without due process of law. The Supreme Court, in deciding this contention was not sound, used the following language with reference to the allegations of the voluntary petition in bankruptcy:

"These are not issuable facts, and notice is unnecessary, unless dismissal is sought when notice is required. Section 59g [Comp. St. 1916, § 9643]."

The District Court, however, could have safely relied upon the proposition that there is and can be no law or practice which would compel a court of bankruptcy or any other court to become a party

to a fraud. The bankruptcy law provides that upon the filing of a voluntary petition the judge shall hear the petition and make the adjudication, or dismiss the petition. As was said by this court in Ogden v. Gilt Edge Mines Co., 225 Fed. 723, 140 C. C. A. 597:

"Bankruptcy proceedings are in the nature of proceedings in equity, and bankruptcy courts administer the law according to the spirit of equity. Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Lockman v. Lang, 132 Fed. 1, 6, 65 C. C. A. 621; Id., 128 Fed. 279, 62 C. C. A. 550, 555; In re Broadway Savings Trust Co., 152 Fed. 152, 81 C. C. A. 58. That stockholders of a corporation may, in equity, either sue for or defend on behalf of the corporation, if the directors fraudulently fail to do so, or where they are the beneficiaries of the action, is a well-recognized principle of equity jurisprudence. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Bronson v. La Crosse R. Co., 2 Wall. 283, 17 L. Ed. 725; In re Swofford Bros. D G. Co. (D. C.) 180 Fed. 549, 553."

The District Judge, in adjudicating upon a voluntary petition in bankruptcy, is not a ministerial, but a judicial, officer, whose first duty is to see that those who minister in the temple of justice shall not invoke his authority for the accomplishment of fraud. We are of the opinion that the allegations of the petition in intervention are clearly proved by the exemplified copy of the record of the suit in the circuit court, and that it was the clear duty of the District Court, as well as of this court, in order to prevent the perpetration of what clearly would be a fraud upon the circuit court, the court of bankruptcy, and the interveners, to dismiss the voluntary petition of appellee.

The order of adjudication and the order refusing the right to file the petition in intervention are reversed, and the case is remanded, with directions to the District Court to allow the intervening petition and exhibits to be filed, and, upon the same being filed, that an order be entered dismissing the voluntary petition in bankruptcy.

The petition to revise, No. 185, Original, is dismissed.